# SUPREME COURT OF THE UNITED STATES

———————

No. 23–6562 (23A688)

———————

## KENNETH EUGENE SMITH *v.* JOHN Q. HAMM, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 25, 2024]

The application for stay of execution of sentence of death presented to JUSTICE THOMAS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, dissenting from the denial of application for stay and denial of certiorari.

Alabama plans to execute Kenneth Eugene Smith tonight by nitrogen hypoxia. That method is untested. Smith is the first person in this country ever to be executed in this way. The details are hazy because Alabama released its heavily redacted protocol under five months ago. What Smith knows is that he will be strapped to a gurney. He will wear a nitrogen-supplying, off-the-rack mask for which the State has not fitted him or even tried on him. Once the nitrogen is flowing into the mask, his executioners will not intervene and will not remove the mask, even if Smith vomits into it and chokes on his own vomit.

Smith is a surprising candidate to test this novel method. Alabama tried and failed to execute him before. In November 2022, Alabama botched Smith's execution by lethal injection. It was Alabama's third failed execution in a row in five months. See *Barber* v. *Ivey*, 600 U. S. \_\_\_ (2023) (SOTOMAYOR, J., dissenting from denial of application for

stay).  Smith had warned repeatedly that Alabama would struggle and likely fail to complete its lethal injection in light of a "pattern of the State's difficulties in establishing venous access."  2023 WL 4353143, *7 (MD Ala., July 5, 2023).  This Court did not listen.  It instead vacated a stay of execution without explanation, over three noted dissents. As a result, Smith's arms were strapped over his head and he watched as his executioners repeatedly stabbed needles into his hands, arms, and collarbone, trying to access his veins.  It took an hour and half after this Court vacated the stay before Alabama called off the execution.

Since that day, Smith has suffered from posttraumatic stress.  Reliving those hours strapped to the gurney, his medical records confirm worsening bouts of nausea and vomiting over the past few weeks.  See Second Supp. Decl. of Katherine Porterfield in No. 2:23–cv–00656 (MD Ala., Jan. 23, 2024), ECF Doc. 87–5, p. 3, ¶¶5–6.  Those symptoms have been resistant to prescribed medications.  He is therefore likely to vomit during the execution as a combined result of this posttraumatic stress and oxygen deprivation.

Smith asks this Court to stay his execution.  He argues that Alabama's untested execution protocol will likely subject him to an unconstitutional risk of cruel and unusual punishment.  According to one of Smith's experts, "there is a substantial and serious risk that Mr. Smith will experience nausea and vomiting during his execution," thus "asphyxiating—that is, choking to death—on his own vomit" before he eventually passes out from hypoxia.  *Id.,* at 3–4, ¶7.  Further, Alabama believes that an air-tight seal is not needed on the mask.  Smith therefore has raised the substantial risk that oxygen will infiltrate the mask and lead to a persistent vegetative state, stroke, or suffocation, superadding pain and prolonging Smith's death.  See Application 6.

In denying Smith's motion for preliminary injunction, the District Court held that Smith failed to make the showing

required for a method-of-execution claim under the Eighth Amendment. Such a claim requires that "the risk of pain associated with the State's method is substantial when compared to a known and available alternative." *Bucklew* v. *Precythe*, 587 U. S. \_\_\_, \_\_\_ (2019) (internal quotation marks omitted). The District Court found that the risk of substantial harm, including the risk of asphyxiation, was overly speculative because it required "a cascade of unlikely events." 2024 WL 262867, \*2 (MD Ala., Jan. 24, 2024). On the known-and-available-alternative requirement, the District Court faulted Smith for failing to provide "a feasible, readily implemented alternative" with his "list of proposed to amendments to the Protocol." 2024 WL 116303, \*21 (MD Ala., Jan. 10, 2024).

Smith appealed the denial of his motion for preliminary injunction and asked the Eleventh Circuit for a stay of execution. The panel unanimously concluded that the District Court legally erred in requiring Smith to provide a "'veritable blueprint'" for an alternative method of execution, a requirement with no basis in this Court's precedent. No. 24–10095 (CA11, Jan. 24, 2024), p. 22, n. 7 (*per curiam*). Two judges, however, upheld the District Court's determination that Smith had failed to establish a risk of substantial harm and concluded that the court's findings of facts were not clearly erroneous. The panel affirmed the denial of Smith's preliminary injunction and denied his stay request.[1] I view the case like Judge Jill Pryor, who dissented. For the reasons given in her dissent, I would not let this decision stand. See *id.*, at 33–35.

Courts considering a stay must weigh the applicant's likelihood of success on the merits, potential for irreparable injury, and the public interest. See *Nken* v. *Holder*, 556 U. S. 418, 434 (2009). Smith has established a substantial

---

[1] Judge Wilson wrote a concurring opinion expressing his concerns with Alabama's untested plan to execute Smith.

likelihood of success on the merits of his claim challenging Alabama's undeterred implementation of its heavily redacted, 5-month-old protocol. The equities here, as in nearly all capital cases where the prisoner has shown a reasonable probability of success on the merits, favor Smith. See *Bucklew*, 587 U. S., at ___, (SOTOMAYOR, J., dissenting). While I would grant the petition for a writ of certiorari and summarily reverse the Eleventh Circuit's order affirming the denial of Smith's preliminary-injunction motion, at a minimum, I would grant Smith's request for a stay of execution.

\*　　\*　　\*

Having failed to kill Smith on its first attempt, Alabama has selected him as its "guinea pig" to test a method of execution never attempted before. *Barber*, 600 U. S., at ___. The world is watching.[2] This Court yet again permits Alabama to "experiment . . . with a human life," while depriving Smith of "meaningful discovery" on meritorious constitutional claims. *Id.*, at ___. This time around, Alabama has adopted a new protocol concerning a never-before-used method of execution. Consistent with Alabama's "familiar veil of secrecy over its capital punishment procedures," it has released only a "heavily redacted" version of that protocol. 2024 WL 116303, \*3. Smith should be allowed to complete discovery and litigate the merits of his claims challenging this new protocol in the ordinary course. That information is important not only to Smith, who has an extra reason to fear the gurney, but to anyone the State seeks

———————

[2] See, *e.g.*, US: Alarm Over Imminent Execution in Alabama, United Nations (Jan. 16, 2024), https://www.ohchr.org/en/press-briefing-notes/ 2024/01/us-alarm-over-imminent-execution-alabama; United States: UN Experts Alarmed at Prospect of First-Ever Untested Execution by Nitrogen Hypoxia in Alabama, United Nations (Jan. 3, 2024), https://www. ohchr.org/en/press-releases/2024/01/united-states-un-experts-alarmed-prospect-first-ever-untested-execution.

to execute after him using this novel method.

Not long ago, this Court remarked that "[t]he Eighth Amendment's protection of dignity reflects the Nation we have been, the Nation we are, and the Nation we aspire to be." *Hall* v. *Florida*, 572 U. S. 701, 708 (2014). This case shows how that protection can be all too fragile. Twice now this Court has ignored Smith's warning that Alabama will subject him to an unconstitutional risk of pain. The first time, Smith's predictions came true. He "survived to describe the intense fear and pain [he] experienced during Alabama's tortuous attempts to execute [him]." *Barber*, 600 U. S., at \_\_\_ (SOTOMAYOR, J., dissenting from denial of application for stay). This time, he predicts that Alabama's protocol will cause him to suffocate and choke to death on his own vomit. I sincerely hope that he is not proven correct a second time.

With deep sadness, but commitment to the Eighth Amendment's protection against cruel and unusual punishment, I respectfully dissent.

# SUPREME COURT OF THE UNITED STATES

———

No. 23–6562 (23A688)

———

## KENNETH EUGENE SMITH *v.* JOHN Q. HAMM, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[January 25, 2024]

JUSTICE KAGAN, with whom JUSTICE JACKSON joins, dissenting from the denial of application for stay and denial of certiorari.

As JUSTICE SOTOMAYOR explains, the method Alabama will use to execute Kenneth Eugene Smith—the use of nitrogen hypoxia—is entirely novel. The State's protocol was developed only recently, and is even now under revision to prevent Smith from choking on his own vomit. The State has declined to provide Smith with all the discovery respecting its protocol which he has requested. And Smith has a well-documented medical condition posing special risks from the State's newly chosen method of execution.

I would grant Smith's petition for a writ of certiorari to consider whether, in those exceptional circumstances, the extremely demanding standard this Court established in *Glossip* v. *Gross*, 576 U. S. 863 (2015), properly applies. See *id.*, at 877 (requiring a prisoner to show that serious pain is "sure or very likely" to occur). Arguably, that standard can work fairly only when more is capable of being known about an execution method. To allow this Court to address that important issue, I would also grant Smith's application for a stay of execution.